UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

STEVEN RONALD RANDALL,           :
                  Petitioner,           :
                              :
      v.                          :   No. 5:16-cr-00518
                              :   No. 5:23-cv-02980
UNITED STATES OF AMERICA,        :
                  Respondent.           :
_____

**O P I N I O N**
Motion to Vacate Sentence, 28 U.S.C. § 2255, ECF No. 57 – Dismissed

**Joseph F. Leeson, Jr.**                                                                            **May 29, 2024**
**United States District Judge**

## I.   BACKGROUND

In two separate cases[1] before this Court, Petitioner Steven Ronald Randall pled guilty and was convicted of multiple counts of bank fraud, in violation of 18 U.S.C. § 1344, and multiple counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  *See* Judgment (Case No. 16-518), ECF No. 36; Judgment (Case No. 18-51), ECF No. 13. The convictions stemmed from his creation of a fraudulent scheme wherein he solicited several co-conspirators for their ATM cards and PINs, deposited fraudulent checks into their accounts, withdrew the funds before banks realized the checks were invalid, and shared the money with his co-conspirators.  *See* Indictment (Case No. 16-518), ECF No. 1; Information (Case No. 18-51), ECF No. 1.  In his first case ("2016 case"), this Court ultimately sentenced Randall to a total term of 126 months of imprisonment, which included four consecutive 24-month terms on his aggravated identity theft charges.  Judgment (Case No. 16-518).

---

[1]     *See* Case Nos. 5:16-cr-00518 & 5:18-cr-00051.

While on pre-trial release during the 2016 case, Randall continued to engage in the same criminal scheme, which led to a second prosecution for fraud and aggravated identity theft ("2018 case"). Information (Case No. 18-51). In the 2018 case, Randall was sentenced to 111 months of imprisonment, which ran concurrently with his previous sentence. Judgment (Case No. 18-51). As part of his plea agreement in the 2018 case, when the judgment was entered in his 2018 case on June 28, 2018, Randall withdrew his pending appeal of the 2016 case and agreed not to file an appeal in the 2018 case. *See* Plea Agreement (Case No. 18-51), ECF No. 5; Mandate (Case No. 16-518), ECF No. 42. Randall now seeks relief under 28 U.S.C. § 2255 from his aggravated identity theft convictions in the 2016 case.[2] See Amend. Mot. Vacate, ECF No. 57.

## II. STANDARD OF REVIEW – Motion to Vacate and Limitation Period under 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).

---

[2] Although Randall initially attempted to dual-file his petition in both criminal cases, this Court directed him to file separate petitions in the criminal cases on the proper § 2255 forms provided by this Court. *See* Aug. 2, 2023 Order, ECF No. 48. Randall only filed an amended Petition in this case.

A petitioner has one year from this time his conviction becomes final to file a timely § 2255 motion. *See* 28 U.S.C. § 2255(f). Specifically, the one-year limitation period begins to run on any one of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*.

### III.    DISCUSSION

The one-year period of limitations to seek § 2255 relief in this case ran in July 2019, shortly after Randall withdrew his appeal to the Third Circuit. However, Randall argues that the limitations period restarted when the Supreme Court released its June 2023 decision in *Dubin v. United States*, 143 S. Ct. 1557 (2023), pursuant to 28 U.S.C. § 2255(f)(3). Specifically, Randall argues that his identity theft crimes have been "invalidated" by *Dubin*, because the Supreme Court "ruled that the identity of the person must be stolen and the name of the person alone used in a crime is not identity theft." Amend. Pet., ECF No. 57, at 2, 11.[3] However, for the reasons discussed herein, the Court holds that *Dubin* has not abrogated or addressed any pertinent legal issues present in this case. Therefore, the Supreme Court has not "newly recognized" any "right" applicable to this case, let alone one that is "retroactively applicable" to this case on

---

[3]     This Court has adopted the pagination assigned by the Electronic Filing System.

collateral review. For these reasons, the limitations period never restarted under 28 U.S.C. § 2255(f)(3) and Randall's petition must be dismissed as untimely.

Randall's identity theft charges stemmed from his use of co-conspirators' identities to deposit and withdraw fraudulent checks. Randall asserts that, under *Dubin*, he should not have been charged with aggravated identity theft because he did not "steal" the identities of his "co-scammers," rather, he had permission to use their identities to perpetrate his fraud scheme. *See* Amend. Pet. at 11. Randall further argues that his "co-scammers" could not possibly be victims of a crime under 18 U.S.C. § 1028A(a)(1), because "they volunteered their personal information for parts of the proceeds of the crime." *See id*. However, Randall misunderstands both the aggravated identity theft statute and the holding of *Dubin*.

Aggravated identity theft occurs when a person "in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person[.]" 18 U.S.C. § 1028A(a)(1).[4] Although the statute does not define "lawful authority," courts have interpreted this language to mean that "regardless of *how* the means of identification is actually obtained, if its subsequent use breaks the law[,]" specifically a subsection (c) felony, then "it is violative of § 1028A(a)(1)." *See e.g.*, *United States v. Ozuna-Cabrera*, 663 F.3d 496, 499 (1st Cir. 2011) (further explaining that "[t]hough 'authorized' activity may in many cases also be 'lawful,' the terms are not interchangeable. . . . [Section] 1028A(a)(1) reasonably proscribes the transfer, possession, or use of another person's means of identification, absent the right or permission to act on that person's behalf *in a way that is not contrary to the law*" (emphasis added) (internal citations omitted)); *United States v. Otuya*,

---

[4] Here, Randall's bank fraud charges were applicable subsection (c) felonies. *See* 18 U.S.C. § 1028A(c)(5).

720 F.3d 183, 189 (4th Cir. 2013) ("[O]ne does not have 'lawful authority' to consent to the commission of an unlawful act. Nor does a 'means of identification' have to be illicitly procured for it to be used 'without lawful authority.'"); *United States v. Lumbard*, 706 F.3d 716, 723-25 (6th Cir. 2013) (explaining that "the phrase 'without lawful authority' in § 1028A is not limited to instances of theft, but includes cases where the defendant obtained the permission of the person whose information the defendant misused"); *United States v. Hines*, 472 F.3d 1038, 1040 (8th Cir. 2007) (holding that the defendant had acted "without lawful authority" in using another person's name and social security number to defraud the police, regardless of whether he had that person's consent to use their identity). *See also United States v. Carrion-Brito*, 362 Fed. Appx. 267, 273 (3d Cir. 2010) (upholding an aggravated identity theft conviction where the defendant purchased the use of a person's name from that individual in order to illegally obtain a passport).

In *Dubin*, the defendant, manager of a psychological services company, defrauded Medicaid when he overbilled for psychological testing. *Dubin v. United States*, 143 S. Ct. 1557, 1563 (2023). The claims submitted to Medicaid for reimbursement overstated the qualifications of the employee who performed the testing and therefore falsely inflated the amount for reimbursement, committing healthcare fraud. *Id*. In addition to healthcare fraud, the Government also charged the defendant with aggravated identity theft, because the defendant used a patient's identification when submitting the fraudulent claims. *Id*. However, the Supreme Court ultimately held that the defendant's use of the patient's identification was not related to a predicate offense under the meaning of 18 U.S.C § 1028A(a)(1). *See id*. at 1563. The Court explained that "§ 1028A(a)(1) is violated when the defendant's misuse of another person's

means of identification is *at the crux* of what makes the underlying offense criminal[.]" *Id*. (emphasis added). The Court further clarified that

> being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.' Instead, with fraud or deceit crimes . . ., the means of identification specifically must be used in a manner that is fraudulent or deceptive.

*Id*. at 1573 (internal marks and citation omitted). Thereafter, the Supreme Court found that the defendant's "use of the patient's name was not at the crux of what made the underlying overbilling fraudulent." *Id*. Rather, "[t]he crux of the healthcare fraud was a misrepresentation about the qualifications of [the defendant's] employee[,]" and using "[t]he patient's name was an ancillary feature of the billing method employed." *Id*.

Here, Randall misunderstands the holding of *Dubin*. He argues that the Supreme Court held that an aggravated identity theft conviction cannot be premised on the use of another's identity if that person consented to such use. To support this argument, Randall points to language in *Dubin* interpreting the words "transfer" and "possess" in the identity theft statute. While explaining why an ancillary use of someone's identity does not violate the aggravated identity theft statute, the Supreme Court reasoned that "[g]enerally, to unlawfully 'possess' something belonging to another person suggests it has been stolen. And to unlawfully 'transfer' something belonging to another person similarly connotes misappropriating it and passing it along." *Dubin*, 143 S. Ct. at 1569. Thereafter, the Court explained that these verbs connote "theft," and track with "ordinary understandings of identity theft: 'a crime in which someone [1] steals [2] personal information about and [3] belonging to another.'" *Id*. (quoting Black's Law Dictionary 894 (11th ed. 2019)). However, although the Court spoke of "generalities" and "ordinary understandings," the Supreme Court did not specifically hold that the identity must be "stolen" in order to satisfy the statute, as Randall contends. Moreover, at no point in *Dubin* did

the Supreme Court address the meaning of "lawful authority" in § 1028A, nor did the Supreme Court abrogate any of the above-mentioned cases interpreting this statutory language. Therefore, *Dubin* did not create a newly recognized right retroactively applicable to this case.

Here, although Randall's co-conspirators gave him their consent to use their identities and bank information, Randall did not have "lawful authority" to use his co-conspirators' identities to commit crimes. Moreover, applying *Dubin*, Randall's use of others' identities was not merely "ancillary" to his fraud crime. Randall's fraud was perpetrated by not only depositing invalid checks but misrepresenting to the banks *who* was depositing and cashing the checks in order to obfuscate his identity and further his fraudulent scheme. Therefore, not only did Randall act without "lawful authority" in using other persons' identities to defraud banks, but the use of their identities was also at the "crux" of what made his conduct criminal, as he specifically used the identities in a way that was fraudulent and deceptive.

## IV. CONCLUSION

For the reasons discussed, the Supreme Court's decision in *Dubin* did not create a newly recognized right retroactively applicable to this case, and Randall's § 2255 petition is therefore dismissed. There is no basis for the issuance of a certificate of appealability, as reasonable jurists would not find it debatable whether this Court was correct in its ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A separate Order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge